IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO. 5:12CV133-RLV

| | |
|---|---|
| TANYA CURTIS,<br>  Plaintiff,<br><br>v.<br><br>GE CAPITAL CORPORATION,<br>  Defendant. | )<br>)<br>)<br>)  MEMORANDUM AND ORDER<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the court on Defendant GE Capital Corporation's Motion to Compel Mediation and Arbitration, and alternatively, Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed on November 5, 2012. (Docs. 6, 7).

**I. Factual and Procedural History**

GE Capital Corporation ("Defendant" or "GE"), hired Tanya Curtis ("Plaintiff" or "Curtis") in August 2006 as a part-time Customer Service Representative based out of the Charlotte, North Carolina customer service call center.[1] (Wright Aff. ¶ 4). As a condition of her employment, Curtis agreed to resolve all employment-related disputes in accordance with GE's alternative dispute resolution ("ADR") procedure, which was titled "RESOLVE" at the time Curtis accepted GE's offer of employment. (Def.'s Mem. Supp., 1; Wright Aff. Exh. B). Curtis signed an "Acknowledgement–Conditions of Employment" on August 21, 2006, which states:

> I acknowledge that I have received and reviewed a copy of the "RESOLVE Program Handbook." I agree to resolve disputes in accordance with the terms of the "RESOLVE Guidelines" for employees of GE Capital and its subsidiaries. THUS, I AGREE AS A CONDITION OF EMPLOYMENT, TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS (AS DEFINED IN THE GLOSSSARY IN THE RESOLVE GUIDELINES AND HANDBOOK) IN COURT AND TO ACCEPT AN ARBITRATOR'S AWARD AS THE FINAL,

---

[1] In 2008, Curtis became a full-time "Neo Coordinator" and "Customer Service Interaction Coach." (Wright Aff. ¶ 4).

BINDING, AND EXCLUSIVE DETERMINATION OF ALL COVERED CLAIMS. I understand that GE Capital reserves the right to amend or terminate the RESOLVE procedure at any time.

(Wright Aff. Exh. B) (capitalization in original).

Curtis also signed a "RESOLVE Employee Acknowledgement" on August 23, 2006. The acknowledgement states, in part: "I acknowledge that I have attended RESOLVE training and have received a copy of the <u>RESOLVE Employee Handbook</u>. I agree to comply with the provisions of the RESOLVE dispute resolution procedure as outlined in the Handbook." (Wright Aff. Exh. D).

Some time after Curtis began working at GE, RESOLVE was amended and renamed "Solutions." (Wright Aff. ¶ 8). On May 12, 2009, Curtis electronically acknowledged that she received the Solutions procedure, completed an online training module, and agreed to the terms and provisions of Solutions.[2] (Wright Aff. ¶ 8, Exh. E). Per this agreement, Curtis agreed to bring all covered claims against her employer in Solutions and waived her right to litigate any covered claims in court.[3] (Wright Aff. Exh. A at 7). In pertinent part, covered claims include "[e]mployment discrimination and harassment claims, based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law." (Wright Aff. Exh. A at 5). Solutions also states "[n]othing in this procedure

---

[2] Solutions provides a process for resolving employment disputes, which proceeds through four sequential levels. (Wright Aff. Exh. A at 2). Employees are encouraged to informally resolve disputes or concerns with management or an appropriate representative before initiating the Solutions ADR procedure. (Wright Aff. Exh. A at 3). In order to initiate Solutions, an employee must formally submit his or her claim to the Solutions Administrator per the "Solutions Level I Submission Form". (Wright Aff. Exh. A at 11). If the dispute is not resolved at a particular level, the employee must re-submit the claim, using the appropriate submission form, proceeding to the next level. (Wright Aff. Exh. A at 12). At levels I and II, Solutions arranges a formal meeting between the employee and the appropriate management. (Wright Aff. Exh. A at 2). At levels III and IV, Solutions provides for mediation and then binding arbitration. (Id.) Only covered claims will be addressed at levels III and IV. (Wright Aff. Exh. A at 5).

[3] Curtis was also obligated to use Solutions following termination of her employment with respect to applicable claims. (Wright Aff. Exh. A at 4).

is intended to discourage or interfere with the parties . . . taking advantage of their rights to file administrative claims or charges with government agencies." (Wright Aff. Exh. A at 4). GE reserved the right to modify or terminate the Solutions procedure with the stipulation that they give employees sixty (60) days' notice. (Wright Aff. Exh. A at 3).

From August 2006 through 2010, Curtis, who allegedly suffers from fibromyalgia, worked from home. (Compl. ¶ 11; Curtis Decl. ¶ 3). In 2010, GE required Curtis to start working from GE's Tyvola Road facility. (Compl. ¶ 12; Curtis Decl. ¶ 4). Curtis asserts she was unable to work from the Tyvola Road facility because of her disability—fibromyalgia—and that working from home was a reasonable accommodation for her disability during her employment. (Compl. ¶¶ 16-17 Exh. A). Allegedly, Curtis informed her managers that her disability prevented her from working at the Tyvola facility, but her request to work from home or have a more flexible schedule was denied.[4] (Curtis Decl. ¶¶ 6-7). Curtis claims GE failed to reasonably accommodate her disability, and she was eventually terminated, on or about March 8, 2011, because her disability prevented her from working at the Tyvola facility. (Compl. ¶¶ 17-18; Curtis Decl. ¶¶ 5, 7).

On June 1, 2011, Curtis filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed the charge and gave Curtis notice of her right to sue on May 24, 2012. Curtis filed a Complaint against GE in the United States District Court for the Western District of North Carolina on August 22, 2012, claiming that her termination by GE was the result of discrimination in violation of the Americans with Disabilities Act, 42 USC § 12101, *et seq*.

---

[4] Additionally, Curtis claims that she contacted Human Resources and spoke with the manager and Ombudsman, neither of whom suggested she file a claim through Solutions. (Curtis Decl. ¶¶ 6-12).

GE filed a motion to stay judicial proceedings and compel mediation and arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and in the alternative, to dismiss the Complaint for lack of subject matter jurisdiction on November 5, 2012.  (Docs. 6, 7).  Curtis timely filed a Response in Opposition to Defendant's Motion and supporting memorandum on December 6, 2012.  (Docs. 11, 12).  Curtis contends that the arbitration agreement with GE is invalid and unenforceable under general principles of contract law because GE reserved the right to freely amend the ADR Procedure and because GE breached the ADR Procedure.  (Pl.'s Mem. Opp'n, 3–7).  Defendant filed a Reply to Plaintiff's Response on December 21, 2012.  (Doc. 15).

## II. Standard

The Federal Arbitration Act ("FAA") "embodies a federal policy favoring arbitration." *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001).  Under the Federal Arbitration Act,

> [a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Additionally, the FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement." *Gilmer v. Interstate / Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (citing 9 U.S.C. §§ 3–4).

In deciding whether to compel arbitration, this Court must determine: (1) whether the parties have agreed to arbitrate, (2) the scope of the arbitration agreement, and (3) whether the claim at issue is arbitrable.  *Genesco, Inc. v. Kakiuchi & Co., Ltd*. 815 F.2d 840, 844 (1987).

**A. Agreement to Arbitrate**

"[W]hether a party has agreed to arbitration is a matter of contract interpretation and 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Drews Distrib.*, 245 F.3d at 349 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Solutions contains a choice of law provision stating that it "shall be construed, interpreted and applied in accordance with the law of the State of New York, without regard to choice of law principles." (Wright Aff. Exh. A at 10). Choice of law provisions are enforceable in North Carolina. *Park v. Merrill Lynch*, 582 S.E.2d 375, 377–78 (N.C. Ct. App. 2003). Where a lawsuit is filed in North Carolina regarding the validity of a contract, "[u]nquestionably the law of the forum, North Carolina, governs all matters of procedure," so long as the choice of law provision does not indicate the law of another state should govern both the procedural and substantive law. *Taylor v. Abernethy*, 620 S.E.2d 242, 250 (N.C. Ct. App. 2005) (quoting *Arnold v. Charles Ent.*, 141 S.E.2d 14, 17 (N.C. Ct. App. 1965)).[5] *See also Boudreau v. Baughman*, 368 S.E.2d 849, 852–53 (N.C. 1988) ("Our traditional conflict of laws rule is that matters affecting . . . remedial or procedural rights are determined by *lex fori*, the law of the forum."). The choice of law provision in Solutions does not indicate the law of New York should govern both the procedural and substantive law; therefore, New York law applies for substantive issues and North Carolina law applies for procedural issues.

---

[5] In *Taylor v. Abernethy*, the North Carolina Court of Appeals considered the effect of a choice of law provision which stated: "Pennsylvania law shall be applied in the construction and enforcement of this agreement." The court interpreted this provision to mean the substantive law of Pennsylvania would apply but not the procedural law, because the provision did not indicate the law of Pennsylvania would govern both the procedural and substantive law. *Taylor*, 620 S.E.2d at 250.

The law of the forum state determines what issues are procedural and what issues are substantive. *Taylor*, 620 S.E.2d at 250 (quoting *Boudreau*, 368 S.E.2d 849, 856 (N.C. 1988) ("The question of what is procedure and what is substance is determined by the law of the forum state.")). North Carolina courts have held that whether or not the parties have mutually agreed to be bound by arbitration is a procedural issue, because the existence of an arbitration agreement is a threshold requirement to compel arbitration. *Revels v. Miss America Org.*, 599 S.E.2d 54, 58 (N.C. Ct. App. 2004). Thus, although Solutions provides that it should be governed in accordance with the law of New York, this Court will apply ordinary principles of North Carolina contract law in determining whether the agreement to arbitrate as required by Solutions is valid and enforceable.

**1. Illusory Promise**

Plaintiff asserts that the arbitration agreement lacks consideration on the grounds that Defendant's promise to arbitrate is illusory since Defendant reserved the right to freely amend the ADR procedure. (Pl.'s Mem. Opp'n, 4–5). An arbitration agreement is supported by adequate consideration when both parties agree to be bound by the arbitration process and the results of arbitration. *Johnson v. Circuit City Stores*, 148 F.3d 373, 378 (4th Cir.1998). However, if Defendant "reserved 'an unlimited right to determine the nature or extent of his performance,'" then Defendant's promise to arbitrate is illusory. *State v. Philip Morris USA Inc.*, 685 S.E.2d 85, 96 (N.C. 2009) (quoting *Wellington–Sears & Co. v. Dize Awning & Tent Co.*, 147 S.E. 13, 15 (N.C. 1929)).

In support of its argument, Plaintiff cites *Hooters of America v. Phillips*, in which the defendant reserved the right to cancel the agreement to arbitrate with 30 days notice and the right change or modify the rules governing arbitration at any time—even in the middle of an

6

arbitration proceeding—without notice to the employee.[6] *Hooters of Am. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999), *aff'g* 39 F.Supp.2d 582, 618 (D.S.C. 1998). The Fourth Circuit found the arbitration agreement unenforceable on the basis that "[the defendant] materially breached the arbitration agreement by promulgating rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith." *Hooters*, 173 F.3d at 938.

The present case is distinguishable from *Hooters* because Defendant's reserved right to modify or revoke the ADR procedure has limitations. Defendant cannot modify the ADR procedure without notice and claims cannot be affected retroactively by modification or cancellation. The ADR procedure agreed to by Plaintiff states:

> The Senior Vice President of Human Resources for the General Electric Company (or his or her designee) may modify or discontinue the Solutions procedure in the future so long as the Company gives affected employees sixty (60) calendar days advance notice. Any such change shall be prospective, and shall not affect previously filed claims.

(Wright Aff. Exh. A at 3). Other courts have upheld arbitration agreements with similar modification provisions. *See, e.g., Joyner v. GE Healthcare*, No. 4:08-2563, 2009 WL 3063040, at *4 (D.S.C. Sept. 18, 2009) (holding that an arbitration agreement which required the defendant to give thirty days notice before modifying or discontinuing the arbitration program is not an illusory promise); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003)

---

[6] Plaintiff specifically cited the District Court decision, which concluded "that [the defendant] retained to itself an unfettered 'right to decide later the nature or extent of [its] performance' by reserving the authority to modify the Rules, or terminate the agreement, at its choice, while denying the same to [the plaintiff]. *Hooters of Am., Inc. v. Phillips*, 39 F. Supp. 2d 582, 618 (D.S.C. 1998) (quoting *Glascock v. Comm'r of Internal Revenue*, 104 F.2d 475, 476 (4th Cir.1939)), *aff'd*, 173 F.3d 933 (4th Cir. 1999). However, in reaching this conclusion the court referenced several provisions which unjustly benefitted the defendant. *Id.* The holding does not stipulate that a party who reserves the right to modify terms of the arbitration procedure or cancel the agreement at will necessarily retains the "unlimited right to determine the nature or extent of his performance."

7

("[Defendant]'s promise to maintain the arbitration agreement for at least thirty days, and until the end of each calendar year, constitutes sufficient consideration.").

The Solutions modification provision does not give Defendant "an unlimited right to determine the nature or extent of his performance" and thereby make its agreement to arbitrate illusory. Therefore, the arbitration agreement is supported by adequate consideration — the parties' mutual promise to be bound by the ADR procedure.

### 2. Breach of Contract

Plaintiff also asserts that Defendant breached the arbitration agreement by "refusing to offer the essential steps of the agreement."[7] (Pl.'s Mem. Opp'n., 6). Plaintiff argues that the breach resulted from Defendant's failure to "offer" the Solutions ADR procedure when Plaintiff raised concerns about accommodations for her disability to management and human resources. (Pl.'s Mem. Opp'n. 6, 7). The Solutions ADR procedure encourages employees to resolve disputes informally—through "discussions with their manager, another manager, or Human Resources—before formally submitting a claim to Solutions." (Wright Aff. Exh. A at 3). In the event that an employee is unable or unwilling to resolve a dispute informally, the employee should submit his or her claim to the Solutions Administrator using the Solutions Level I Submission Form. (Wright Aff. Exh. A at 11).

The terms of the arbitration agreement did not require Defendant to "offer" the ADR procedure to Plaintiff when she approached management and human resources with a dispute concerning accommodations for her disability. (Wright Aff. Exh. A at 3, 11). In order to initiate the four-step ADR Procedure, Plaintiff had to submit a claim to the Solutions Administrator. (Wright Aff. Exh. A at 11). Defendant's failure to "offer," or suggest, that Plaintiff use the ADR

---

[7] Plaintiff does not allege that Defendant refused to allow Plaintiff to proceed with the Solutions ADR Procedure after Plaintiff took steps to initiate Solutions by submitting a Level I Form to the Solutions Administrator.

8

Procedure to resolve her dispute about accommodations for her disability did not breach any terms of the arbitration agreement. The parties' agreement to arbitrate through the Solutions ADR procedure is valid and enforceable.

**B. Scope of the Arbitration Agreement and Arbitrability**

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The scope of the Solutions ADR procedure explicitly encompasses employment discrimination claims based on disability. Employment disputes arising from statutory claims for discrimination are well within the scope of the FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001); *Gilmer v. Interstate / Johnson Lane Corp.*, 500 U.S. 20, 28–29 (1991). Plaintiff's claim against Defendant for unlawful employment discrimination in violation of the ADA is arbitrable.

### III. Conclusion

The record and law warrants a finding that Plaintiff and Defendant mutually agreed to arbitrate the dispute and that the arbitration agreement is supported by adequate consideration. Additionally, all evidence shows that Defendant in no way breached the terms of the agreement. Therefore, the court finds that the arbitration agreement between the parties is enforceable and Plaintiff's claim against Defendant must be resolved via arbitration.

### IV. Order

**IT IS, THEREFORE, ORDERED THAT:**

1) Defendant's Motion to Compel Arbitration is hereby **GRANTED** and the Court hereby directs the parties to proceed to arbitration;

2) Defendant's alternative Motion to Dismiss is hereby **DENIED**;

3) This matter is hereby **STAYED** pending arbitration; and

4) The parties shall jointly submit quarterly **STATUS REPORTS** during the pendency of the arbitration proceedings, with the first such report due to this Court **on or before Friday, November 15, 2013**.

Signed: August 15, 2013

Richard L. Voorhees
United States District Judge